UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 02-CR-38-2 |
| | ) |
| KHALED OBEID, | ) Judge Blanche M. Manning |
| | ) |
| Movant. | ) |

### MOTION FOR RETURN OF PROPERTY

"Movant" Khalid Obeid, acting pro se, hereby moves pursuant to Federal Rules of Criminal Procedure, Rule 41(g), for return of property seized by the United States of America, for the reasons set forth below.

### I. STATEMENT OF FACTS

On March 9, 2001, the government seized $123,360.00 in monetary currency from the Movant.

On October 8, 2001, after Movant had just delivered a FEDEX package contained $160,000. in checks to the FEDEX agency in Bedford Park, the government seized the package from FEDEX agency.

On January 10, 2002, the government seized from the Harlem CD savings account an amount of $223,919.26 in CDs plus two certified checks in the amount of $2,500. and $15,600.

On January 10, 2002, federal search warrants were executed at Affordable Motor Cars and Prestige Luxury Motors located in Bridgeview, Illinois, and owned by Movant Khale Obeid. As a result of the search warrants, over seventy-seven (77)

vehicles were seized from Affordable Motor Cars and Prestige Luxury Motors, including, the following seized vehicles:

### I. Seized Vehicles from Prestige Luxury Motors

a. 1984 Cadillac Eldorado Biarritz, VIN: 1G6AL6780EE48835;
b. 1992 Lincoln Town Car, VIN: 1LNLM81W5NY694692;
c. 1993 BMW 525I, VIN: WBAHD6316PBJ85682;
d. 1994 Chevy Blazer, VIN: 1GNDT13WXR2132464;
e. 1994 Acura Legend L, VIN: JH4KA7660RC024660;
f. 1995 Mercedes Benz S420, VIN: WDBGA43E7SA218801;
g. 1995 Oldsmobile Aurora, VIN: 1G3GR62C3S4127920;
h. 1996 Ford E150 Van, VIN: 1FDEE14HXTHA04054;
i. 1998 Mercury Villager Van, VIN: 4M2ZV1118WDJ28338;
j. 1996 Mercedes E320, VIN: WDBJF55F7TJ015038;
k. 1997 Chevrolet Van, VIN: 1GBFG15R7V1065047;
l. 1998 BMW 528I, VIN: WBADD6322XWBW48641;
m. 1997 Chrysler T/C Van LXI, VIN: 1C4GP64L9VB251189;
n. 1997 Chevy Tahoe, VIN: 1GNEK13R2VJ357351;
o. 1997 Range Rover SUV, VIN: SALPV124XVA352051;
p. 1997 GMC Safari, VIN: 1GKDM19W6VB543100;
q. 1997 BMW 518I, VIN: WBADD6321VBW07636;
r. 1997 Ford Expedition, VIN: 1FMFU18L5V
s. 1998 Harley Davidson Motorcycle, VIN: 1D9SS64D3WH251587;
t. 1998 Chevy Astro Van, VIN: 1GNDM19W3WB1822669;
u. 1998 Lincoln Navigator, VIN: 5LMPU28L1WLJ51782;
v. 1998 Mercury Mountaineer, Asset ID: 02-DEA-401950;
w. 1998 GMC Jimmy SLS, VIN: 1GKDT13W7W2504433;
x. 1998 Ford Explorer, VIN: 1FMZU34E4WUD29199;
y. 1998 Dodge Durango, VIN: 1B4HS28Y6WF228574;
z. 1998 Ford Mustang GT, VIN: 1FAFP42XXWF227943;
aa. 1998 Ford Van, VIN: 2FMZA5147WBC40877;
bb. 1998 Lincoln Continental, VIN: 1LNFM97V3WY742659;
cc. 1998 Nissan Altima, VIN: 1N4DL01D9WC160451;
dd. 1999 Lincoln Navigator, VIN: 5LMPU28LXXLJ02274;
ee. 1998 BMW528I, VIN: WBADD6322WBW44146;
ff. 1999 Chevrolet Suburban, VIN: 1GNFK16R3XJ324429;
gg. 1999 Oldsmovile Cutlass, VIN: 1G3NB52M2X6327274;
hh. 1999 Lexus LX470 Truck, VIN: JT6HT00W7X0074340;
ii. 1999 GMC Yukon Denali, VIN: 1GKEK13R2XR919573;
jj. 1999 Ford Expedition SUV
kk. 2000 Dodge Intrepid 4 door, VIN: 2B3HD46R2YH210113;
ll. 2000 Lincoln LS 4 door, VIN: 1LNHM87A9YY780576;
mm. 2001 Lexus IS300 4 door, VIN: JTHBD182610011268;
nn. 2002 Pontiac Bonneville Sedan, VIN: 1G2HZ541624126257;
oo. 2002 Chevrolet Monte Carlo 2 door, VIN: 2G1WX12K0Y9246938;
pp. 2002 Infiniti Q45 Sedan, VIN: JNKBF01A72M006922;
qq. 2000 Mercedes S430 Sedan, VIN: WDBNG70J4YA032747; and
rr. 1997 Ford Probe Coupe, VIN: 1ZVLT20A9V5137874.

## II. Seized Vehicles from Affordable Motor Cars:

a.  1974 Mercedes 450 SLC, VIN: 10702412008190;
b.  1986 Mercedes 560 SEL 4 door, VIN: WDBCA39D2GA216503;
c.  1988 Mercedes 560 SEL Sedan, VIN: WDBCA39D4JA383887;
d.  1991 Infiniti Q45 4-door, VIN: JNKNG01COMM112658;
e.  1991 BMW 525I Sedan, VIN: WBAHD631XMBJ59971;
f.  1991 Mitsubishi Galant GS Sedan, VIN: JA3CR56R1MZ000921;
g.  1991 Ford Mustang GT, VIN: 1FACP42E6MF116188;
h.  1992 Chevrolet Camaro 2 door, VIN: 1G1FP23E4NL103123;
i.  1992 Lincoln Town Car Executive, VIN: 1LNLM81 W6NY760781;
j.  1993 Cadillac Deville 4 door, VIN: 1G6CD53BXP4228637;
k.  1993 Lincoln Town Car Signature, VIN: 1LNM82W3PY775241
l.  1993 Intinity J30, VIN: JNKAY216PM024315;
m.  1994 Ford Club Wagon Van (E150), VIN: 1 FMEE11Y2RHA71857;
n.  1994 Pontiac Grnad Prix SE, VIN: 1G2WJ52M9RF316791;
o.  1994 Cadillac Deville, VIN: 1G6KF52Y9RU305948;
p.  1994 Cadillac Seville, VIN: 1G6KS52Y9RU814143;
q.  1994 Honda Accord EX, VIN: 1HGCD5667RA166373;
r.  1995 Toyota Previa Van, VIN: JT3AC13R7S1198234;
s.  1995 Mercury Villager Van, VIN: 4M2DV11W5SDJ78682;
t.  1995 Chevy Blazer, VIN: 1GNDT13W8S2263253;
u.  1995 Honda Accord LX, VIN: 1HGCD5634SA120687;
v.  1996 Pontiac Grand Prix, VIN: 1G2WJ12M9TF222832;
w.  1996 Ford Controu, VIN: 1FALP6531 TK131760;
x.  1997 Ford Taurus, VIN: 1FALP52U5TG193415;
y.  1997 Ford Taurus GL, VIN: 1FALP52U2VG236451;
z.  1997 Nissan Altima GXE, VIN: 1N4BU31D7VC171050;
aa. 1997 Chevy Astro Van, VIN: 1 GNEL19W1VB172633;
bb. 1996 Chrysler Sebring JXI Convertible, VIN: 3C3EL55H5TT313582;
cc. 1997 Plymouth Grand Voyager SE, VIN: 2P4GP4430VR235822;
dd. 1998 Lincoln Towncar, VIN: 1LNFM81W2WY651023;
ee. 1999 Hyundai Sonata, VIN: KMHWF255S5XA082080;
ff. 2000 Mercury Grand Marquis, VIN: 2MEFM75WXYX619172;
gg. 1989 Mercedes 300E, VIN: WDBEA30D9KB023435; and
hh. 2002 Cadillac Escalade (Black), VIN: 1GYEK63N92R123007.

On January 10, 2002, the United States of America seized from MCL autoseller (owner Lester Bafai) in Bridgeville, Illinois, three cars that belong to Movant KHALED OBEID: a Mercedes CLK430 (black); a 1999 Lexus 470 (white); and a 2001 Chevy Tahoe. The government has not provided Movant with an inventory list of these cars.

On or about January 20, 2002, Agent Daniel Foley, Drug Enforcement Agency (DEA) seized from a car agency in Orlando, FL. (owned by Victor Nemeh), 18 (eighteen) cars that belong to Harlem

-3-

Motors. All of these cars are luxury cars and had a market value of between $650,000.00 to $750,000.00.

On May 7, 2002, the federal grand jury of this district returned an indictment charging Movant with participating in a conspiracy to violate the Controlled Substances Act through the sale and distribution of pseudoephedrine. Additionally, Movant was charged with conspiracy to commit money laundering offenses.

The indictment sought forfeiture to the United States of certain property owned by Movant, pursuant to the provisions of 21 U.S.C. §853(a)(1) and (2) (Forfeiture Allegation One) and 18 U.S.C. §982(a)(1) (Forfeiture Allegation Two). Specifically, the indictment named the following property as subject to forfeiture:

a. All assets of Harlem Motor Cars/Prestige Motors, Inc., including real property located at 7358 South Harlem Avenue, Bridgeview, Illinois;

b. All assets of Affordable Motor Cars, Inc., including real property located at 7528 South Harlem Avenue, Bridgeview, Illinois;

c. All assets of Luxury Car Renting and Leasing, Inc., including real property located at 7055 West 79th Street and 7115 West 79th Street, Burbank, Illinois;

d. Real property located at 7 Turnberry Court, Burr Ridge, Illinois;

e. Real property located at 14505, South Central Court, Unit M 3, Oak Forest, Illinois;

f. Real property located at 9010 South Milford Court, Hickory Hills, Illinois;

g. Real property located at 155 County Road, 326, Sweetwater, Tennessee;

h. Real property located at U.S. Highway 11 and County Road 326, Sweetwater, Tennessee;

    i.    Real property located at 10536-38 South Roberts Road, Palos Hills, Illinois;

    j.    Real property located at 13322 W. Onondaga Trail, Lockport, Illinois; and

    k.    Real property located at 8024 Mallow Drive, Tinley Park, Illinois.

On July 2, 2002, and October 4, 2002, this court entered protective orders granting relief and directing the interlocutory sale of certain property subject to forfeiture, including the following real properties:

    a.    Real property located at 7358 S. Harlem Avenue, Bridgeview, Illinois;

    b.    Real property located at 7528 S. Harlem Avenue, Bridgeview, Illinois;

    c.    Real property located at 7055 W. 79th Street, Burbank, Illinois;

    d.    Real property located at 7115 W. 79th Street, Burbank, Illinois;

    e.    Real property located at 5 Turnberry Court, Burr Ridge, Illinois;

    f.    Real property located at 14505 S. Central Court, Unit M3, Oak Forest, Illinois;

    g.    Real property located at 326 CO RD, Sweetwater, Tennessee;

    h.    Real property located at CO RD 326-155, Sweetwater, Tennessee;

    i.    Real property located at 10536-38 South Roberts Road, Palos Hills, Illinois;

    j.    Real property lcoated at 1322 W. onondaga Trail, Tinley Park, Illinois; and

    k.    Real property located at 9010 S. Milford Court, Hickory Hills, Illinois.

The agreed protective order provided that the proceeds from the sale of the foregoing properties be held in escrow by the United States Marshals Service pending further order of the court. As a result of the sale of properties named in paragraph

-5-

nine (9) a-j above, approximately $1,949,757.64 was deposited into an escrow account held by the United States Marshal Service.

On March 5, 2004, pursuant to Fed.R.Crim.P.11, Movant entered a plea of guilty to Count One and Count Nine of the indictment charging him with violations of the Controlled Substances Act and one count of conspiring to commit money laundering activities.

Pursuant to the terms of the plea agreement, Movant agreed to the entry of a forfeiture judgment in the amount of $1,500,000 and against the property identified in the indictment and the $123,360. seized in monetary currency to be deducted from the money judgment.

On August 22, 2006, the district court entered a government's proposed preliminary order of forfeiture ordering Movant to forfeit all right title and interest Movant had in the amount of $1,500,000. and the property seized during this criminal case.

On August 22, 2006, at sentencing, the government requested that the forfeiture be made a part of Movant's sentence and part of the judgment order. In light of the discussion between the Court and the U.S. attorney, the court declined in making the preliminary order of forfeiture the final order of forfeiture. The following is the discussion that took place in the district court at sentencing on the matter of forfeiture:

> MS. McCLELLAN (AUSA): Your Honor, there is two remaining matters. The government would move to dismiss all counts other then Count 1 and 9 of the charging document, and it requests that the forfeiture be made part of Mr. Obeid's sentence and part of the judgment order.

-6-

THE COURT: That will be the order

MS. McCLELLAN: Thank you.

THE COURT: All right. That will be the order. Good luck to you. Sir.

(See Sentencing Hearing transcript, page 33, attached herewith as Exhibit A).

### II. FINAL ORDER OF FORFEITURE THAT IS NOT PART OF SENTENCING HAS NOT EFFECT; MOVANT SHOULD HAVE HIS PROPERTY RETURNED OR RESENTENCED ACCORDINGLY

The statutes and rules require that the district court includes a final order of forfeiture in its sentence. "The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed ... that the person forfeit to the United States all property described in this subsection." 21 U.S.C. § 853(a). The Federal Rules of Criminal Procedure spell out the process in somewhat more detail: "At sentencing -- or at any time before sentencing if the defendant consents -- the order of forfeiture becomes final as to the defendant and must be made a aprt of the sentence and be included in the judgment." Fed.R.Crim.P. 32.2(b)(3). See also United States v. Benett, 423 F.3d 271, 275 (3rd. Cir. 2005)(final order of forfeiture must be included in the sentence and judgment imposed on the defendant).

In the instant case, the attorney representing the government, at sentencing, requested that the forfeiture be made part of the sentence. The court simply stated that "that will be the order," nothing else. No provision and no specification were made by the court stating what was being forfeited and under what statute. Federal Rule of Crim. P. 32.2(b)(1)

-7-

instruct the court to determine what property is subject to forfeiture under the applicable statute. The Rule differentiates how to proceed when the government seeks forfeiture of a particular asset from how to proceed when the government seeks a personal money judgment and imposes a duty on the court to find the prerequisite nexus when ordering forfeiture of particular asset:

> "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Rule 32.2(b)(1); U.S. v. Reiner, 393 F.Supp.2d 52,55 (D.Med.2005). "When the government seeks to impose criminal forfeiture, Federal Rule of Criminal Procedure 32.2(b)(1) [ ] requires the sentencing court to 'determine what property is subject to forfeiture under the applicable statute.'" U.S. v. Capoccia, 503 F.3d 103, 109 (2nd Cir. 2007).

The district court did not establish the forfeitability of any of the assets as required by Rule 32.2(b)(1), neither prior to sentencing nor during sentencing. The forfeiture was illegally imposed against Movant.

### III. PROPERTY SEIZED BY THE GOVERNMENT BUT NOT FORFEITED SHOULD RETURN TO MOVANT

In United States v. Sims, 376 F.3d 705, 708 (7th Cir. 2004) the Seventh Circuit held that a movant could seek return of property that was seized but not forfeited. Sims at 708.

In the instant case, the property listed below should return to Movant because these items were not part of the indictment, the plea agreement, or the preliminary order of forfeiture signed by the court. The following are the items:

1) $160,000. seized from the FEDEX agency as stated on page 1, ¶ 3, supra.

2) $223,919.26 seized from Harlem CD savings account plus two certified checks in the amount of $2,500. and $15,600. as stated on page 1, ¶ 4, supra.

3) Three cars seized from MCL autoseller (one Mercedes CLK 430 (black), one Lexus 470 (white), one Chevy Tahoe) as stated on page 3, ¶ 1, supra).

4) Eighteen cars seized from a car agency in Orlando, as stated on page 3, ¶ 2, supra).

IV. **THE AMOUNT OF MONEY FROM THE SELL OF MOVANT'S PROPERTY EXCEEDING THE MONEY JUDGEMENT ORDER OF $1.5 MILLION DOLLAR SHOULD RETURN TO MOVANT**

The preliminary order of forfeiture issued by the district court ordered Movant to forfeit to the government $1,500,000. and the property seized during the investigation. Since the district court did not make any nexus between the property assets and the offense committed, it is Movant's contention that all of his assets seized and sold by the government was applied against the $1,500,000. forfeiture as a substitute assets under 21 U.S.C. 853(p). Movant also asserts that the amount of money received by the government from the sale of his property exceeds $1,500,000. as ordered by the court. The government should provide information of all the assets sold and be ordered to return the money exceeding the preliminary order of forfeiture.

V. **THE CRIMINAL FORFEITURE OF MOVANT'S PROPERTY AND $1,500,000 MONEY JUDGMENT VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. "[A] punitive forfeiture violates the Excessive Fines Clause [when] it is grossly disproportional" to the crime conduct." U.S. v. Bajakajian, 524 U.S. 321, 334, 118 S.Ct. 2028 (1998). To determine whether the forfeiture is disproportionate, a court "must compare the amount of the forfeiture to the gravity of the defendant's offense." Id. at 336-37.

In the instant case, the maximum fine that could be imposed on Movant was $750,000.00 on both counts of forfeiture. Imposition of forfeiture against Movant for $1,500,000.00 and against the property seized during the investigation violates the Eighth Amendment to the United States Constitution.

## CONCLUSION

Based on the foregoing Movant respectfully asks this Court for the following relief:

1) Order the government to return all items that were seized but not forfeited;

2) Order the government to inform this Court the amount of money obtained from the sale of all of Movant's assets, real property and etc..., and order the return of any amount of money exceeding $1,5 million dollar judgment;

3) Resentence Movant in accordance with Title 21 U.S.C. § 832(a) and Federal Rule of Criminal Procedure 32.2(b)(3); and

4) Grant Movant any other relief this Court deems appropriate and necessary.

Respectfully submitted,

Dated: July 31, 2008.

Khaled Obeid
Reg. No. 14164-424
NEOCC
2240 Hubbard Rd.
Youngstown, OH  44505

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,            )
                                     )
v.                                   )   Case No. 02-CR-38-2
                                     )
KHALED OBEID,                        )   Judge Blanche M. Manning
          Movant.                    )

## E X H I B I T

### "A"

```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   UNITED STATES OF AMERICA,   )   No. 02 CR 38
                                 )
 4            vs.                )   Chicago, Illinois
                                 )
 5   KHALED OBEID, et al.,       )
                                 )   August 22, 2006
 6            Defendants.        )   11:30 a.m.

 7                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE BLANCHE M. MANNING
 8
     APPEARANCES:
 9
     For the Government:     MS. MARSHA A. McCLELLAN
10                           (United States Attorney's Office,
                              219 South Dearborn Street, 5th Floor,
11                            Chicago, Illinois  60604)

12
     For Defendant
13   Khaled Obeid:           MS. MARY F. DeSLOOVER
                             (Law Offices of Mary DeSloover,
14                            407 South Dearborn Street, Suite 1735,
                              Chicago, Illinois  60605)
15

16

17

18

19

20

21

22

23                       PATRICK J. MULLEN
                         Official Court Reporter
24            219 South Dearborn Street, Room 2128,
                      Chicago, Illinois  60604
25                       (312) 435-5565
```

1  close to Chicago as possible, consistent with his security
2  level?
3           THE COURT: I'll make the recommendation. It's
4  merely a recommendation. I have no control over where the
5  Bureau of Prisons sees fit to send prisoners. They know what
6  their needs are and what their resources are, but I will make
7  the recommendation that you be sentenced to a facility that is
8  close to Chicago, as close to Chicago as they possibly can
9  afford you as a right.
10          MS. DeSLOOVER: Thank you.
11          THE COURT: Was there something else you wanted to
12 bring to my attention?
13          MS. McCLELLAN: Your Honor, there's two remaining
14 matters. The Government would move to dismiss all counts other
15 than Counts 1 and 9 of the charging document, and it requests
16 that the forfeiture be made a part of Mr. Obeid's sentence and
17 part of judgment order.
18          THE COURT: That will be the order.
19          MS. McCLELLAN: Thank you.
20          THE COURT: All right. That will be the order. Good
21 luck to you, sir.
22          MS. DeSLOOVER: Thank you.
23          MS. McCLELLAN: Thank you.
24     (Brief pause.)
25          MS. McCLELLAN: Your Honor, would the Court consider

1  scheduling a status in a couple of weeks to revisit the status
2  of the house on Milford in Hickory Hills?
3          THE COURT: Is the wife here?
4          MS. McCLELLAN: This is Mrs. Obeid (indicating).
5          THE COURT: All right. You want to schedule a
6  hearing for what date?
7          MS. McCLELLAN: Your Honor, I think if the Court
8  gives me approximately 14 to 21 days, by that time I will have
9  clarified matters with the bank and should be in a position to
10 have things clarified with Mrs. Obeid.
11         THE COURT: Okay. We'll put it over. Robbie, give
12 me a date.
13         THE CLERK: Either September 7th or the 19th.
14         THE COURT: The 7th or 19th of September, which one?
15         MS. McCLELLAN: The 19th, please.
16         THE COURT: September 19th at 11:00 o'clock.
17         MS. McCLELLAN: Thank you.
18     (Proceedings concluded.)
19              C E R T I F I C A T E
20     I, Patrick J. Mullen, do hereby certify that the
   foregoing is a complete, true, and accurate transcript of the
21 proceedings had in the above-entitled case before the Honorable
   BLANCHE M. MANNING, one of the judges of said court in Chicago,
22 Illinois, on August 22, 2006.
23
24                              _____
                                   Official Court Reporter
25

## CERTIFICATE OF SERVICE

I, Khaled Obeid, cerfity that on July 31, 2008, I sent a copy of Motion for Return of Property to Ms. Marsha A. McClellan (AUSA), United States Attorney's Office, 219 South Dearborn Street, 5th Floor, Chicago, Illinois 60604, by United States Postal Service, first class, postage prepaid.

July 31, 2008.                                   _____
                                                      Khaled Obeid